13 MISC 00311

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| WI-LAN USA, INC.<br>and WI-LAN INC.,<br><br>Plaintiffs,<br><br>v.<br><br>TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; and TOSHIBA AMERICA INFORMATION SYSTEMS, INC.,<br><br>Defendants. | Case No: Misc _____<br>(S.D. Fla. Case No. 12-Civ-23744-Middlebrooks/Brannon) |

**MEMORANDUM OF LAW IN SUPPORT OF WI-LAN USA, INC. AND WI-LAN INC.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO TIME WARNER CABLE INC.**

### I. INTRODUCTION

Plaintiffs Wi-LAN USA, Inc. and Wi-LAN Inc. (collectively "Wi-LAN" or "Plaintiffs") move pursuant to Rule 45(c)(2)(B)(i) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of the Southern District of New York for an order ("Motion to Compel" or "Motion") compelling third-party Time Warner Cable Inc. ("TWC") to comply with subpoenas duly issued by this Court.

### II. FACTUAL BACKGROUND

The underlying lawsuit is a patent infringement action brought by Wi-LAN against Toshiba Corporation, Toshiba America, Inc., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc. (collectively "Toshiba") in the United States District

1

Court for the Southern District of Florida ("Florida Court"). Wi-LAN generally alleges that Toshiba infringes and has infringed U.S. Patent No. 6,359,654 ("the '654 Patent") and U.S. Patent No. 7,034,889 ("the '889 Patent"). (Declaration of Brian P. O'Donnell ("O'Donnell Decl.") ¶ 2.) The '654 Patent generally relates to the conversion of television signals. (*Id.* ¶ 3.) Accordingly, Wi-LAN's allegations involve the manner in which Toshiba's accused flat panel television products convert television signals. (*Id.*) The format of the signals themselves when they are received by Toshiba's televisions is thus highly relevant to Wi-LAN's infringement allegations. (*Id.* ¶ 4.)

Television signals are received by Toshiba's products either over-the-air or through cable companies, such as TWC, and satellite providers. (*Id.* ¶ 5.) In order to obtain relevant information regarding the specific format of TWC's television signals received by Toshiba's products (what are known a "interlaced" or "progressive" signals), Wi-LAN caused a narrowly-tailored subpoena to be issued by this Court to Toshiba on May 28, 2013. (O'Donnell Decl., Exh. A, Subpoena.) The subpoena sought limited documents and testimony regarding the format of TWC's video signals. (*Id.*) The compliance date given on the subpoena was June 12, 2013. (*Id.*)

Counsel for Wi-LAN spoke with counsel for TWC by telephone on June 7, 2013. (O'Donnell Decl., Exh. B, 6/7/2013 Email from Benyacar to O'Donnell.) Over the course of the next several weeks, Wi-LAN and TWC worked diligently to reach an agreement concerning TWC's compliance with the subpoena. On August 7, 2013, Wi-LAN proposed that TWC simply sign a short declaration authenticating certain documents and describing certain business practices. (O'Donnell Decl., Exh. C, 8/7/2013 Email from O'Donnell to Benyacar; O'Donnell Decl., Exh. D, Draft Declaration.) Unfortunately, Toshiba refused to stipulate to the

admissibility of such a declaration at trial in the underlying litigation. (O'Donnell Decl., Exh. E, 8/9/2013 Email from O'Donnell to Benyacar.) Accordingly, Wi-LAN sought to schedule a very brief deposition of TWC that would cover the substance of the draft declaration. (*Id.*)

In further efforts to compromise and minimize TWC's burden in responding to the subpoena, counsel for Wi-LAN and counsel for TWC spoke by phone again on August 16, 2013. (O'Donnell Decl., Exh. F, 8/16/2013 Email from O'Donnell to Benyacar.) During that discussion the parties agreed that TWC would provide a deposition on written questions, thereby further easing the burden on TWC. (*Id.*; O'Donnell Decl. ¶ 6.) Wi-LAN provided the written deposition questions along with a second subpoena including the deposition questions "out of an abundance of caution," recognizing that the original subpoena encompassed the deposition questions. (O'Donnell Decl., Exh. F; O'Donnell Decl., Exh. G, Renewed Subpoena; O'Donnell Decl., Exh. H, Deposition by Written Questions.) Wi-LAN then continued to work with TWC to coordinate the timing and recording of TWC's answers to the deposition on written questions. (O'Donnell Decl. ¶ 7.)

On August 28, 2013, TWC contacted Wi-LAN and informed Wi-LAN that TWC would not be able to provide a witness to respond to the deposition questions by the August 30, 2013 return date, which is the close of fact discovery in the underlying litigation, and requested an extension of time to respond. (O'Donnell Decl., Exh. I, 8/28/2013 Email from Langsam to O'Donnell.) In the meantime, however, Toshiba informed Wi-LAN that Toshiba is objecting to the TWC deposition on written questions in its entirety. (O'Donnell Decl., Exh. J., 8/29/2013 Email from O'Donnell to Langsam; O'Donnell Decl., Exh. K, Toshiba's Objections and Responses to Plaintiffs' Deposition of Time Warner Cable Inc. by Written Questions.) In light of Toshiba's objection, Wi-LAN reiterated its request to TWC that TWC sign a declaration in

lieu of a deposition. (O'Donnell Decl., Exh. J, 8/29/2013 Email from O'Donnell to Langsam.) Upon receipt of such an executed declaration Wi-LAN would immediately present the executed declaration to the Florida Court and request that that court allow the declaration to be admitted as evidence at trial. (*Id.*)

On August 28, 2013, Toshiba also filed a Motion for an Order to Show Cause or in the Alternative for a Protective Order in the Florida Court seeking an order from the Florida Court barring Wi-LAN from proceeding with the TWC deposition altogether ("Toshiba's Motion"). (O'Donnell Decl., Exh. L, Toshiba's Motion.) Wi-LAN will oppose Toshiba's Motion. Wi-LAN's duly-issued subpoena is proper in scope and timing. TWC has proposed to provide a declaration, but Toshiba will not agree to the admissibility of the declaration, so a deposition is required. TWC has refused to provide a deponent to date or say when it will, if it will provide a witness at all. (*See* O'Donnell Decl., Exh. M, 8/30/2013 Letter from Reisner to O'Donnell.) Therefore, in view of today's close of discovery deadline, Wi-LAN has no choice other than to move to compel. (O'Donnell Decl., Exh. N, 8/30/2013 Email from O'Donnell to Reisner.) Wi-LAN does not object to this Court reserving judgment until the Florida Court acts on Toshiba's Motion there.

## III.  **LEGAL STANDARD**

"At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection" pursuant to a subpoena. Fed. R. Civ. P. 45(c)(2)(B)(i). "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the court.'" *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

The scope of discoverable information pursuant to a third-party subpoena is governed by Rule 26 of the Federal Rules of Civil Procedure. *See Andrews v. Cruz*, No. 04 Civ. 0566 PSC RLE, 2006 WL 1984650 (S.D.N.Y. July 14, 2006) (applying Rule 26 to a motion to compel compliance with a third-party subpoena). "The scope of discovery is generally limited to any matter, not privileged, which is relevant to the subject matter of the pending action or appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* at *2. "Relevancy is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quotations and citation omitted). A third party must comply with a duly issued subpoena unless the subpoenaed party demonstrates that the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." *Howard v. City of New York*, No. 12 Civ. 933(JMF), 2013 WL 174210, at *1 (S.D.N.Y. Jan. 16, 2013) (quoting Fed. R. Civ. P. 45(c)(3)) (ellipses in original).

## IV.   ARGUMENT

Wi-LAN's subpoena does not seek privileged or otherwise protected matter. Nor is Wi-LAN's subpoena unduly burdensome. Rather, the subpoena is narrowly tailored and targeted to the specific, limited information relevant to Wi-LAN's claim of infringement against Toshiba. In particular, the subpoena lists only five requests for production of documents, each specifically directed toward the format of TWC's video signals. (O'Donnell Decl., Exh. A at 11.) The subpoena also lists only twelve deposition topics, nine of which are limited to the format of TWC's video signals. (*Id.* at 12-13.) The three remaining topics seek (1) the total number of TWC's subscribers, information which can be readily determined by TWC; (2) follow-up questions within the scope of the other topics; and (3) authentication of documents, which relate

only to the format of TWC's video signals. (*Id.* at 13.) TWC cannot reasonably assert that these narrowly-tailored requests pose an undue burden.

Wi-LAN has worked together with TWC for over two months in an effort to secure compliance, and still believes that a compromise can be reached. However, in light of TWC's inability, or unwillingness, to produce a witness before the close of fact discovery and Toshiba's general unwillingness to agree to *any* discovery from TWC, Wi-LAN must move to compel and does not object to this Court deferring ruling on this motion until the Florida Court rules on Toshiba's Motion and, if the Florida Court denies Toshiba's Motion, compelling TWC to comply with the subpoena for deposition on written questions.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs Wi-LAN USA Inc. and Wi-LAN Inc. respectfully request that this Motion to Compel be granted and ask the Court to compel TWC to comply with Wi-LAN's subpoena for deposition on written questions. Wi-LAN does not object to this Court deferring resolution of the instant motion pending resolution of Toshiba's Motion in the Florida Court.

Dated: August 30, 2013

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ Frederick L. Whitmer
Frederick L. Whitmer
1114 Avenue of the Americas #21
New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: fwhitmer@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 30, 2013, a true and correct copy of the foregoing was filed and served by electronic mail to the following:

David S. Benyacar
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000
Fax: (212) 836-8689
Email: david.benyacar@kayescholer.com

Doris Johnson Hines
Joyce Craig
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400
Emails: dori.hines@finnegan.com; joyce.craig@finnegan.com

Emmanuel Azih
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
3500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308
Tel: (404) 653-6400
Fax: (404) 653-6444
Email: emmanuel.azih@finnegan.com

Terri Meyers
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
Miami Center - 17th Floor
Miami, FL 33131
Tel: (305) 379-9000
Fax: (305) 379-3428
Email: tmeyers@klugerkaplan.com

                                                                           /s_____